UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BILLIE J. P.,[1] | : | Case No. 3:22-cv-99 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

This matter has returned before the Court for review of Plaintiff Billie J.P.'s claim challenging the Social Security Administration's denial of her application for Supplemental Security Income. This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #7).

**I.    Background**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on August 30, 2016, alleging disability due to posttraumatic stress disorder, depression, anxiety, fibromyalgia, and her left hip being out of place. After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Deborah F. Sanders. The ALJ concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. (Doc. #7-2, *PageID* #s 38-49). While the Appeals Council denied review, this Court remanded the case to the Commissioner. *See Billie J. P. v. Comm'r of Soc. Sec.*, No. 3:20-cv-269 (S.D. Ohio June 30, 2020); (Doc. #7-11, *PageID* #s 1853-1859). Upon remand, ALJ Stuart Adkins held a second hearing via telephone and issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since August 30, 2016, the application date.

Step 2: She has the severe impairments of fibromyalgia; degenerative disc disease of the lumbar spine; anxiety; depression; posttraumatic stress disorder; degenerative joint disease of the right knee and left hip; cataracts; and glaucoma.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for about 4 hours and sit for about 6 hours in an 8- hour workday. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps

and stairs, stoop, kneel, crouch and crawl. She should avoid unprotected heights, dangerous machinery, and commercial driving. She can perform simple, routine tasks but not at a production rate pace. She can have occasional superficial contact with coworkers and supervisors with 'superficial contact' defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice. She cannot perform jobs involving over-the-shoulder supervision or teamwork and tandem tasks. She can have no interaction with the general public. She can tolerate occasional changes to a routine work setting defined as 1-2 changes per week."

She has no past relevant work.

Step 5: She can perform a significant number of jobs that exist in the national economy.

(Doc. #7-10, *PageID* #s 1783-93). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since August 30, 2016, the date the application was filed. *Id.* at 1793.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-10, *PageID* #s 1780-93), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708,

722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In her Statement of Errors, Plaintiff contends that the ALJ erred by: (1) failing to fully and fairly develop the record as it relates to Plaintiff's impairments and their related limitations; (2) rejecting the opinions of Plaintiff's treatment providers; and (3) failing to adequately weigh the opinions of the agency consultants under the applicable legal standards. (Docs. #s 8 and 11). The Commissioner maintains that substantial evidence supports the ALJ's decision. (Doc. #10).

#### A. Medical Opinion Evidence

In her Statement of Errors, Plaintiff argues that the ALJ reversibly erred in evaluating the opinions from her treating psychiatrist, Sunita Agarwal, M.D. (Doc. #8, *PageID* #s 4212-17). Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

4

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 416.927(c)(2)); *see Gentry*, 741 F.3d at 723.[2]

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

In addition to the treatment records from her office, Dr. Agarwal responded to two sets of questionnaires concerning Plaintiff's mental functioning. Dr. Agarwal completed the first mental status questionnaire in March 2017. (Doc. #7-8, *PageID* #s 994-96). In the questionnaire, Dr.

---

[2] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017)(to be codified at 20 C.F.R. pts. 404, 416). Since Plaintiff's application was filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to her claim.

5

Agarwal described Plaintiff as "depressed/anxious" and noted that she was "nervous, shaky, [and] does not leave home." *Id*. at 994. Further, while Plaintiff was oriented to time, place, and person, she had hyperproductive speech, poor attention and concentration, limited insight, and a past history of a heroin addiction. *Id*. Dr. Agarwal noted that Plaintiff had been diagnosed with post-traumatic stress disorder for a year and was on several medications with a guarded prognosis. *Id*. at 995. As for Plaintiff's functional abilities, Dr. Agarwal opined that Plaintiff could follow simple instructions only; maintain attention for only a short period; and has a limited ability to sustain concentration, persist at tasks, and complete them in a timely fashion. *Id*. Dr. Agarwal concluded by indicating that Plaintiff had poor adaption abilities and that she would react poorly to pressures in work settings or elsewhere, involving simple and routine, or repetitive, tasks. *Id*.

Dr. Agarwal also joined Plaintiff's counselor, Mark Schweikert, LPCC-S, in completing a mental impairment questionnaire in May 2018. (Doc. #7-8, *PageID* #s 1320-23). In this questionnaire, Dr. Agarwal and Mr. Schweikert indicated that Plaintiff had been diagnosed with acute post-traumatic stress disorder, major depressive disorder, and opioid dependence, which was in early remission. *Id*. at 1320. They noted that Plaintiff exhibited signs and symptoms, including sleep disturbance; mood disturbances; social withdrawal or isolation; emotional lability; illogical thinking or loosening of associations; decreased energy; recurrent panic attacks; anhedonia or pervasive loss of interests; intrusive recollections of a traumatic experience; persistent irrational fears; and generalized persistent anxiety. *Id*. As a result of these impairments, they opined that Plaintiff would be off-task twenty percent or more of the workday and be absent more than three times a month. *Id*. As for Plaintiff's functional limitations, Dr. Agarwal and Mr. Schweikert opined that she was markedly impaired in her overall ability to learn, recall, or use information to

6

perform work activities. *Id*. at 1322. Additionally, they found that she was extremely impaired in her overall abilities to relate to and work with supervisors, co-workers, and the public; focus attention on work activities and to stay on task at a sustained rate; and regulate her emotions, control her behavior, and maintain well-being in the work setting. *Id*. Finally, they indicated that Plaintiff would still have a severe underlying psychiatric condition that would markedly impair her ability to complete a normal work schedule if she no longer abused drugs or alcohol. *Id*.

In reviewing Dr. Agarwal's opinions, the ALJ acknowledged that she was Plaintiff's treating source, but declined to give her opinion controlling weight. (Doc. #7-10, *PageID* #s 1789-90). In support, he stated that "neither Dr. Agarwal's own notes nor the evidence when considered as a whole support the assert[ion] that [Plaintiff] would be more limited than assessed above." *Id*. at 1790. Here, the ALJ pointed out that "while Dr. Agarwal notes that [Plaintiff] does not leave her home, she does in fact leave her home and has left her home alone." *Id*. The ALJ also noted that "while at times in her records, Dr. Agarwal notes [Plaintiff] to appear[] depressed, tearful, sad or anxious, the rest of [Plaintiff's] mental status examinations are generally unremarkable[.]" *Id*. (citing Doc. #7-8, *PageID* #s 1436-1501). The ALJ also criticized Dr. Agarwal's opinion because it was "not set forth in vocationally relevant terms defining what [Plaintiff] can do despite her impairment." *Id*. As a result, the ALJ assigned Dr. Agarwal's opinion only "partial weight, though only insofar as it is consistent with the above detailed mental limitations." *Id*.

The ALJ's justifications for discounting Dr. Agarwal's opinion are flawed for several reasons. While the ALJ acknowledged that Dr. Agarwal served as Plaintiff's "psychiatric treating source" and mentioned the issue of controlling weight, the ALJ did not properly analyze the opinion under the two conditions of the treating physician rule. That is, the ALJ failed to discuss

whether Dr. Agarwal's opinion is (1) well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with the other substantial evidence in the case record. Instead, the ALJ improperly reduced the two-step evaluation procedure mandated by the Regulations into solely a consideration of the remaining factors in the Regulations, such as the "supportability" and "consistency" factors. *See* 20 C.F.R. § 416.927(c)(1)-(6). This constitutes error because the "supportability" and "consistency" factors—along with the others listed in the Regulations—"are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart*, 710 F.3d at 376 (emphasis added) (citation omitted). The ALJ's focus on the factors "hinders a meaningful review of whether the ALJ properly applied the treating physician rule that is the heart of this regulation." *Id.* (citing *Wilson*, 378 F.3d at 544).

Further, by ignoring the two-stage analysis of the treating physician rule, the ALJ also failed to satisfy his obligation to "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (July 2, 1996); *see also Wilson*, 378 F.3d at 544-45 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.").

By collapsing the analysis of Dr. Agarwal's opinions into one step, the ALJ failed to evaluate her opinions under the correct legal criteria. "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' we have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the

opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" *Blakely*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).

Additionally, an ALJ's mischaracterization of the record typically requires remand. *See, e.g., Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes."); *Dalton v. Comm'r of Soc. Sec.*, No. 2:20-CV-3636, 2021 WL 2430939, at *11 (S.D. Ohio June 15, 2021), *report and recommendation adopted*, 2021 WL 2853442 (S.D. Ohio July 8, 2021) (remanding due to factual inaccuracies in ALJ's characterization of treating source's notes). In assessing Dr. Agarwal's opinion, the ALJ acknowledged that, "at times," Dr. Agarwal documented Plaintiff "appear[ing] depressed, tearful, sad, or anxious" but that "the rest of [Plaintiff's] mental status examinations [were] generally unremarkable." (Doc. #7-10, *PageID* #1790) (citing Doc. #7-8, *PageID* #s 1436-1501). However, upon review of the records cited by the ALJ, most contained reports of Plaintiff with a depressed and/or anxious mood. (*See* Doc. #7-8, *PageID* #s 1444, 1453, 1455, 1459, 1462-63, 1464-66, 1467-69). Further, at many of these appointments, Plaintiff also reported nightmares, flashbacks, panic attacks, and being afraid to sleep. *Id.* at 1436, 1449, 1458, 1461, 1486. Thus, the ALJ's conclusion that these treatment records show "generally unremarkable" findings is not supported by substantial evidence and fails to accurately represent the records cited. As a result of this mischaracterization, the ALJ's assessment is not supported by substantial evidence. *See Johnson,* 2016 WL 7208783, at *4; *see also Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F.

App'x 771, 777 (6th Cir. 2008) (remand required, in part, because the ALJ was "selective in parsing the various medical reports").

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

10

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to have this case remanded to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #8) is **GRANTED;**

2. The Commissioner's non-disability finding is **VACATED**;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

5. The case is terminated on the Court's docket.


September 28, 2023                     *s/Peter B. Silvain, Jr.*
                                       Peter B. Silvain, Jr.
                                       United States Magistrate Judge

11